UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD W., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 18-5469-SP <br><br> MEMORANDUM OPINION AND ORDER |

# I.
# **INTRODUCTION**

On June 19, 2018, plaintiff Richard W. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly excluded manipulative limitations from a new residual functional capacity ("RFC") determination; and (2) whether the ALJ's step

five determination is supported by substantial evidence. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 5-11; *see* Defendant's Memorandum of Points and Authorities in Support of Answer ("D. Mem.") at 3-6.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes the ALJ's new RFC determination properly excluded manipulative limitations, but the ALJ erred at step five. Consequently, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a high school graduate and was 45 years old on his alleged disability onset date. AR at 66-67, 107. He has past relevant work as a machine packager and material handler. *Id.* at 77.

Plaintiff initially filed applications for a period of disability, DIB, and SSI on January 11, 2012, with an alleged onset date of January 11, 2011. *Id.* at 88, 108. The Commissioner denied plaintiff's applications, after which plaintiff filed a request for a hearing. *Id.* at 88. After a hearing before an ALJ, the applications were denied and subsequently denied for review by the Appeals Council. *Id.* at 88-103. In his May 24, 2013 decision, the ALJ determined plaintiff suffered from the severe impairments of left wrist scapholunate ligament tear with associated Kienbock's disease status post left wrist arthrodesis and obesity. *Id.* at 90. The ALJ found plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk for six hours in an eight-hour workday and sit for six hours. *Id.* at 91. The ALJ precluded plaintiff from pushing and pulling with his left upper extremity, climbing ropes, ladders, and scaffolds, crawling, and handling with the left upper extremity, but found plaintiff could finger occasionally

with the left upper extremity. *Id.* The ALJ found plaintiff was unable to perform past relevant work, but could perform work as a host/greeter and as a mail sorter, and therefore was not disabled. *Id.* at 95-96.

On March 3, 2015, plaintiff filed an application for a period of disability and DIB, and on March 6, 2015, plaintiff filed an application for SSI. *Id.* at 107, 122. Plaintiff alleged disability due to a fused wrist, depression, anxiety, uncontrollable diabetes, hypertension, severe pain, pain in both shoulders, Kienbock's disease, and nerve damage. *Id.* The Commissioner denied plaintiff's applications initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id.* at 177-198.

On August 9, 2017, plaintiff appeared and testified at a hearing before the ALJ. *Id.* at 64-84. The ALJ also heard testimony from a vocational expert ("VE"), Lynda Berkley. *Id.* at 78-81. On December 22, 2017, the ALJ denied plaintiff's claims for benefits. *Id.* at 16-28.

Because there was a prior unfavorable decision in plaintiff's claim for benefits, the ALJ noted it would be presuming continuing non-disability pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). AR at 16-17. He noted plaintiff could rebut this presumption by proving "changed circumstances indicating a greater disability." *Id.*; *see Chavez*, 844 F.2d at 693. If plaintiff could not prove such circumstances, the adjudicator of the subsequent claim had to adopt disability findings contained in the final decision on the prior claim, unless there was new and material evidence relating to a finding, or there has been a change in law, regulations, or rulings. AR at 17-18.

The ALJ found the *Chavez* presumption rebutted. *Id.* The ALJ specifically noted the previous ALJ determined plaintiff did not have any significant mental impairments or a significant shoulder impairment. *Id.* at 20. The ALJ found there were changed circumstances in plaintiff's case – namely, the current medical

record now revealed medically determinable mental and shoulder impairments, which restricted plaintiff's functional capacity, and therefore the ALJ was not bound by the prior decision. *Id.* at 17, 20.

Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 24, 2013, the alleged disability onset date. *Id.* at 20.

At step two, the ALJ found plaintiff suffered from the following severe impairments: left wrist scapholunate ligament tear with associated Kienbock's disease status post left wrist arthrodesis, obesity, bilateral shoulder impingement, major depressive disorder, and an anxiety disorder not otherwise specified. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to: lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours during an eight-hour workday, and sit for six hours. *Id.* The ALJ limited plaintiff to occasionally climbing ropes, ladders, and scaffolds, and occasionally reaching bilaterally overhead. *Id.* The ALJ additionally limited plaintiff to simple routine tasks with only occasional contact with coworkers, supervisors, and the general public. *Id.*

At step four, the ALJ determined plaintiff was not capable of performing his past relevant work as a machine packager and a material handler. *Id.* at 26.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

At step five, the ALJ found plaintiff's RFC falls somewhere between the light and sedentary ranges, and therefore a finding of not disabled is appropriate under Rules 202.21 and 201.21 of the Medical Vocational Guidelines found at 20 C.F.R. part 404, Subpart P, Appendix 2 (the "Grids"). *Id.* at 27. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 28.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the

ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

### A. **The ALJ Properly Excluded Manipulative Limitations from the New RFC Determination**

The prior ALJ found plaintiff precluded from handling with the left upper extremity and limited to no more than occasional fingering with that extremity. AR at 91. In determining plaintiff's RFC, the ALJ whose decision is now before this court found no handling or fingering limitations. *See* AR at 21. Plaintiff argues the ALJ was required to abide by the prior determined limits where there was no new medical opinion specifically addressing those limits – just a new opinion that addressed plaintiff's left wrist fusion but did not opine any related limitations. P. Mem. at 6-7.

A previous final determination of non-disability creates a presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996); *see also Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985); *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568-69 (9th Cir. 1983); Social Security Acquiescence Ruling ("SSAR") 97-4(9).[2] "[I]n order to overcome the presumption of continuing

---

[2] The Commissioner issues SSARs when a "United States Court of Appeals holding conflicts with [the Commissioner's] interpretation of a provision of the

6

nondisability arising from the first administrative law judge's findings of nondisability, [the claimant] must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). The presumption of non-disability does not apply if the claimant proves "a change in the claimant's age category . . . , an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability." SSAR 97-4(9).

    "The first [ALJ's] findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Chavez*, 844 F.2d at 694 (citation omitted). "Although the first ALJ's RFC findings are entitled to some res judicata consideration, the *Chavez* presumption does not prohibit a subsequent ALJ from considering new medical information and making an updated RFC determination." *Alekseyevets v. Colvin*, 524 Fed. Appx. 341, 344 (9th Cir. 2013) (internal quotation marks and citation omitted). "Medical evaluations conducted after a prior adjudication necessarily constitute new and material evidence." *Nursement v. Astrue*, 477 Fed. Appx. 453, 454 (9th Cir. 2012) (citation omitted).

    Here, the previous ALJ's RFC finding precluded plaintiff from handling with the left upper extremity but found plaintiff could finger occasionally. AR at 91. The previous ALJ issued his decision denying benefits on May 24, 2013. *Id.* at 85. While the previous ALJ's finding is entitled to some res judicata or collateral estoppel consideration, the subsequent ALJ was not prohibited from considering new medical information. The ALJ explicitly found changed

---

Social Security Act or regulations." 20 C.F.R. § 416.1485(b). SSARs are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(2); *accord Pinto v. Massanari*, 249 F.3d 840, 844 n.3 (9th Cir. 2001).

7

circumstances, and stated that with respect to particular issues, he would adopt prior findings where there was no new evidence or change, but would make new findings where there was new evidence. *Id.* at 17.

The ALJ had new medical evidence in the form of a consultative examination on September 16, 2015. *Id.* at 548-52. Dr. Kambiz Hannani, an orthopedic surgeon, determined plaintiff had no range of motion of his left wrist because of his wrist fusion. *Id.* at 550. Dr. Hannani noted the range of motion of plaintiff's hands and fingers was within normal limits. *Id.* Plaintiff demonstrated 50 pounds of grip strength in his right hand and 30 pounds in his left hand. *Id.* Dr. Hannani also found plaintiff had bilateral shoulder impingement with limited range of motion. *Id.* at 551. Dr. Hannani opined plaintiff was restricted from frequent overhead activities with the bilateral upper extremities, along with certain lifting and carrying limitations. *Id.* at 551. He did not opine any limitations with respect to plaintiff's handling or fingering.

Plaintiff argues Dr. Hannani's failure to address whether plaintiff had any limitations with respect to his left wrist fusion is simply the absence of an opinion, which is insufficient to rebut the previous ALJ's handling and fingering limitations. P. Mem. at 6-7. The court disagrees. Given that Dr. Hannani explicitly noted plaintiff had a normal range of motion in his hands and fingers, and given that Dr. Hannani explicitly opined other limitations with respect to plaintiff's upper extremities, his failure to impose handling or fingering limitations is reasonably interpreted as an opinion that there were no handling or fingering limitations or other limitations related to plaintiff's wrist, rather than as the absence of an opinion. The ALJ was entitled to consider this new medical evidence and make an updated RFC determination, one without a limitation on plaintiff's wrist or handling or fingering.

Indeed, the ALJ expressly relied on Dr. Hannani's opinion and recounted

these findings in detail. *See* AR at 24. Based on Dr. Hannani's opinion and the state agency medical consultants' opinions, which effectively agreed with Dr. Hannani's opinion, the ALJ stated he could not say that the instant medical record demonstrated the consultants' opinions were misplaced or that greater limitations were warranted. *Id.* The ALJ properly relied on Dr. Hannani's opinion in his updated RFC determination. As such, the ALJ did not err in his RFC determination.

**B.** **The ALJ's Step Five Determination Is Not Supported By Substantial Evidence**

Plaintiff argues the ALJ erred in his step five determination as to the jobs plaintiff was capable of performing, and the ALJ's findings are not supported by substantial evidence since he rejected the VE's testimony. P. Mem. at 9. Defendant argues the ALJ's findings are supported by substantial evidence because the ALJ properly relied on the Medical-Vocational Guidelines – the Grids. D. Mem. at 4-6.

At the hearing, the VE testified plaintiff would be able to perform the jobs of housekeeping cleaner, retail marker, or router. AR at 80. In making his step five findings, the ALJ expressly rejected the VE's testimony, finding it was not consistent with the Dictionary of Occupational Titles ("DOT"). *Id.* at 28. Specifically, the ALJ limited plaintiff to occasional overhead reaching but the VE identified jobs that required frequent overhead reaching. *Id.* at 21, 28. The ALJ therefore relied on Grid Rules 202.21 and 201.21 instead to determine plaintiff was not disabled. *Id.* at 27. The ALJ also reviewed the DOT on his own to find plaintiff could perform the jobs of racker, semiconductor bonder, groover and stripper operator, and laminating machine off bearer. *Id.*

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468

F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.912(b)(3).

The Commissioner can show there are a significant number of other jobs in the national economy the claimant can perform by taking the testimony of a VE, or by using the Medical-Vocational Guidelines, the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (citation omitted); *see also Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted). "The grids categorize jobs by their physical-exertional requirements and consist of three separate tables – one for each category: '[m]aximum sustained work capacity limited to sedentary work,' '[m]aximum sustained work capacity limited to light work,' and '[m]aximum sustained work capacity limited to medium work.'" Tackett, 180 F.3d at 1101 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00). "They may be used, however, only when the grids accurately and completely describe the claimant's abilities and limitations." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal quotation marks and citation omitted).

"[T]he grids will be inappropriate where the predicate for using the grids – the ability to perform a full range of either medium, light, or sedentary activities – is not present." *Id.*; *see also Tackett*, 180 F.3d at 1101 ("a claimant must be able to perform the *full range* of jobs in a given [exertional] category for the grids to apply"). "If a claimant's strength limitations differ from the technical difficulties of sedentary, light, or medium work – for example the claimant falls somewhere between sedentary and light work – then the claimant is said to have *exertional* limitations that are not described by the grids." *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J., concurring)

(citing 20 C.F.R. part 404, subpart P, Appendix 2 § 200.00(d), (e) (1987)).

"[T]he grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (internal quotation marks and citation omitted). In such cases, the testimony of a vocational expert is required. *Burkhart*, 856 F.2d at 1340. An exertional limitation is an impairment that affects a claimant's ability to meet work strength demands, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1569a. A non-exertional limitation is an impairment that affects a claimant's ability to work "without directly affecting his or her strength," such as mental, postural, manipulative, sensory, or environmental limitations. *Desrosiers*, 846 F.2d at 579 (9th Cir. 1988) (Pregerson, J., concurring); *see also Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.7 (9th Cir. 1988); 20 C.F.R. § 404.1569a(c). "[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d at 577.

Here, the ALJ found plaintiff retained the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours during an eight-hour workday, and sit for six hours. AR at 21. Plaintiff was limited to occasionally climbing ropes, ladders, and scaffolds, as well as only occasionally reaching bilaterally overhead. *Id.* Mentally, plaintiff was limited to simple routine tasks with only occasional contact with coworkers, supervisors, and the general public. *Id.* With respect to the mental limitations, the ALJ noted plaintiff had moderate limitations in understanding, remembering, or applying information, and in interacting with others, but mild limitations in concentrating, persisting, or maintaining pace, and in adapting or managing himself. *Id.*

The ALJ noted that if plaintiff retained the RFC to perform a full range of either light or sedentary work, then the Grids directed a finding of "not disabled" pursuant to Medical-Vocational Rules 202.21 and 201.21. *Id.* at 27. The ALJ then noted plaintiff's RFC fell somewhere between the light and sedentary exertional ranges. *Id.* The ALJ concluded Social Security Ruling ("SSR") 82-12 indicated a finding of not disabled was appropriate.[3] *Id.* The ALJ reviewed the DOT, which he found revealed no less than 23 occupations at the unskilled, light and sedentary exertion levels that would require no more than occasional reaching and did not require dealing with others beyond receiving instructions, including racker, semiconductor bonder, stripper operator, and laminating machine off bearer. *Id.* In making these findings, the ALJ rejected the VE's testimony as inconsistent with the DOT. *Id.* at 28.

While the ALJ was entitled to rely on the Grids instead of a VE's testimony, this reliance is subject to the conditions discussed above. Here, because plaintiff has some non-exertional limitations, the ALJ was required to first examine whether these limitations would significantly limit the range of work permitted by plaintiff's exertional limitations. At step two, the ALJ noted plaintiff had the non-exertional impairments of obesity, major depressive disorder, and an anxiety disorder. AR at 20; *see also Nerio v. Colvin*, 2015 WL 12656242, at *4 (N.D. Cal. May 4, 2015) ("obesity in and of itself constitutes a non-exertional limitation") (citations omitted); *Holland v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("The functional limitations caused by anxiety, depression, concentration, and

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

12

memory impairments are nonexertional limitations.") (citing 20 C.F.R. § 404.1569a).

The Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." *Hoopai*, 499 F.3d at 1077. In his RFC analysis, the ALJ concludes he found "little, if any, evidence in the treatment record demonstrating symptoms or limitations, consistent with the assessment that the claimant's depression is severe . . . ." *Id.* at 23. Furthermore, despite finding plaintiff's anxiety disorder was a severe impairment at step two, the ALJ noted in his RFC analysis that the record was inconsistent as to plaintiff's anxiety. *Id.* The ALJ noted there were "multiple reports where the claimant's mental status proved largely, if not entirely unremarkable." *Id.*

"The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Hoopai*, 499 F.3d at 1076. Thus, although the ALJ here found plaintiff's depression and anxiety severe at step two, he went on to determine the record did not support the same, which subsequently meant these non-exertional limitations alone were not "sufficiently severe" so as to require a VE's testimony. *See Hoopai*, 499 F.3d at 1076 ("satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert. Instead, an ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case").

With respect to plaintiff's obesity, the ALJ determined there was no evidence that plaintiff's weight limited his ability to sit, stand, walk, his range of motion, and/or his ability to otherwise move about. AR at 25. Therefore, the ALJ explicitly found plaintiff's non-exertional limitation of obesity was not sufficiently severe so as to limit the range of his exertional limitations. Accordingly, the ALJ did not err in relying on the Grids due to his non-exertional limitations of obesity, depression, and anxiety because the record either did not support these limitations or did not limit the range of work permitted by exertional limitations.

Nonetheless, the ALJ also determined in his RFC findings that plaintiff was limited to occasionally reaching bilaterally overhead. *Id.* at 21. The Ninth Circuit, in an unpublished opinion, has held that "an ALJ must use a vocational expert at Step 5" when a claimant has a limitation to occasional overhead reaching because it is a significant non-exertional limitation. *Montoya v. Colvin*, 649 Fed. Appx. 429, 431 (9th Cir. 2016). The court reasoned that "the Social Security Administration has established that reaching is an activity required in almost all jobs and that the inability to reach may eliminate a large number of occupations a person would otherwise so. Overhead reaching, in particular, may be necessary for jobs at all levels, including reaching overhead for a binder, stocking shelves, or holding up ladders." *Id.*

Thus, because the ALJ expressly limited plaintiff to occasional bilateral overhead reaching, he was required to use a VE rather than the Grids at step five. Although the ALJ did hear from a VE at the hearing, he rejected the VE's testimony, and instead relied on the Grids to determine jobs that plaintiff could perform. The ALJ erred in doing so.

Nor can this error be found harmless. As noted, the ALJ also relied on his own review of the DOT to determine plaintiff could perform the work of racker, semiconductor bonder, stripper operator, and laminating machine off bearer. There

is not substantial evidence in the record to support this determination by the ALJ, unaided by either the Grids or VE testimony. Among other things, as plaintiff points out, there is no evidence that such jobs existed in significant numbers in the national economy. As such, the ALJ's step five findings are not supported by substantial evidence.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021.

Here, as set forth above, remand is appropriate because there are outstanding

issues that must be resolved before it can be determined whether plaintiff is disabled. The ALJ must consider and properly utilize the testimony of a VE instead of relying on the Grids due to plaintiff's limitation to occasional overhead reaching and, if appropriate, further develop the record in this regard. Thereafter, the ALJ must proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 30, 2019

SHERI PYM
United States Magistrate Judge